**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL ACTION NO. 1:19-CV-00298-KDB**

| | |
|---|---|
| **KAREN ELIZABETH JENKINS,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ANDREW M. SAUL,**<br><br>**Defendants.** | **<u>ORDER</u>** |

**THIS MATTER** is before the Court on Plaintiff Karen Jenkins' Motion for Summary Judgment (Doc. No. 9) and Defendant's Motion for Summary Judgment (Doc. No. 11). Ms. Jenkins, through counsel, seeks judicial review of an unfavorable administrative decision denying her application for a period of disability and disability insurance benefits and supplemental income under the Social Security Act.

Having reviewed and considered the parties' written arguments, the administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**; Defendant's Motion for Summary Judgment is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

On July 13, 2018, Plaintiff protectively filed applications for a period of disability and disability insurance benefits under title II, and supplemental security income under title XVI, of the Social Security Act, alleging that she had been disabled since May 11, 2018 (*see* Tr. 10, 202, 204). Plaintiff's applications were denied initially and upon reconsideration (*see* Tr. 10, 130, 139, 143). After conducting a hearing on June 7, 2019, Administrative Law Judge ("ALJ") James

Cumbie denied her application in a decision dated July 3, 2019. (Tr. at 7-20). On August 21, 2019, the Appeals Council denied Plaintiff's request for review (*see* Tr. 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Jenkins has requested judicial review.

## II. THE COMMISSIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process established by the Social Security Administration to determine if Ms. Jenkins was disabled under the law during the relevant period.[1] At step one, the ALJ found that Ms. Jenkins had not engaged in substantial gainful activity ("SGA") since her alleged onset date and at step two that she had several medically determinable and severe impairments: bipolar-II disorder, adjustment disorder, and anxiety (*see* Tr. 12). However, the ALJ found at step three that none of Plaintiff's impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (*see* Tr. 13).

The ALJ then determined that Ms. Jenkins had the residual functional capacity (RFC) to perform the full range of work at all exertional levels — but with the following non-exertional limitations:

> she can perform mental reasoning level 2 which is defined as apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations. The claimant is limited to occasional interaction with the public and coworkers.

---

[1] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

(Tr. 14).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work (*see* Tr. 18) and at step five concluded that jobs (including warehouse worker, hand packager and machine feeder) existed in significant numbers in the national economy that Plaintiff — given her age (46), education (completed 12th grade), work experience (as a medical coder, medical records clerk, transcriptionist, etc.) and RFC — could perform (*see* Tr. 19). Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Act from May 11, 2018, through July 3, 2019 (*see* Tr. 20).

### III. LEGAL STANDARD

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith*, 795 F.2d at 345; *Blalock*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION

The basis for Ms. Jenkins' appeal is her argument that the ALJ erred in his assessment of the medical opinion evidence in her case. In particular, she contends that the ALJ improperly "reject[ed]" the opinions of Plaintiff's treatment providers, Dr. Todd Davis and Ms. Londyn Conner, "without proper explanation." (*See* Tr. 14-18). As a consequence of these alleged errors, Ms. Jenkins asks that this Court remand this matter for further administrative proceedings, including a *de novo* hearing and decision. However, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has not given good reason for the weight afforded to a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209, at *2 (4th Cir. 1999) (table) (citations omitted). Also, a physician's opinion is afforded significantly less weight if it is not supported by clinical evidence or if it is inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(3), (4). For the reasons discussed below, the Court finds that substantial evidence supports the ALJ's

4

consideration of the medical evidence and thus declines Ms. Jenkins' request to find that the ALJ erred in doing so.

Ms. Jenkins does not allege that she is disabled because of a physical (as distinguished from mental) disability. Rather, the record reflects that her "problems were not of a physical nature." (Tr. 17). Accordingly, her RFC contained only non-exertional limitations. During the relevant period, Plaintiff's mental health treatment provider was Londyn Conner, a physician's assistant, and her primary care doctor was Todd D. Davis, M.D. The ALJ also considered medical opinion evidence from State agency psychological consultants and a State Medicaid decision. In relevant summary, the ALJ found that Ms. Connor's opinion is of limited persuasiveness, that Dr. Davis's opinions are of limited persuasiveness and that the State Medicaid Decision that Plaintiff's mental impairments satisfied Listing 12.04A is not persuasive (*see* Tr. 17–18).

First, Plaintiff argues that the ALJ failed to fully consider her own testimony and evidence in his consideration of the opinion of her medical providers. (*See* Pl. Br. 6) ("[t]he ALJ further erred by focusing solely on the mental status examinations without consideration of Plaintiff's complaints"). The Court disagrees. While the Plaintiff may well dislike his conclusions, the ALJ's decision clearly reflects his full *consideration* of her testimony. (Tr. 15-17). After summarizing Plaintiff's key complaints, the ALJ concluded that Plaintiff's statements "concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical and other evidence of record …" (Tr. 15). More specifically, the ALJ stated:

> Her testimony at the hearing appears to be overstated, particularly with regard to complaints of not getting out of bed and [not being able to] communicate with people [*see* Tr. 46], which are totally unsupported by the medical findings of record, including her ability to engage in a wide range of activities including [being able to] sweep, mop, do laundry, vacuum, wash dishes, cook, dust, make beds, and scrub [*see* Tr. 453], [and] care for her elderly parents, including her father who she described as having Alzheimer's . . . [*see* Tr. 58, 418, 444, 448]

5

(Tr. 17). Accordingly, the Court finds that the ALJ properly considered Ms. Jenkins' testimony and complaints.

Second, with respect to Ms. Conner, the ALJ accorded "limited persuasion" to her medical statement because "the degree of limitation assessed is not supported by the treatment records," finding that "other than a few references to claimant presenting as 'mildly depressed" or 'depressed' (Ex 4F/16 and 19 and 6F/3), mental status exams have otherwise been essentially normal with her presenting "with good grooming and hygiene, speech is normal rate and volume, mood is euthymic with congruent affect, motor behavior within normal limits, thoughts are logical and goal directed, attitude is cooperative with good eye contact, thought content negative for SI/HI, judgment and insight are good, and she is grossly cognitively intact with no impairment in memory (Ex 4F/3, 6, 9, 12, 16, 19, 23; 6F/3 and 7F/2 and 6)." In particular, the ALJ noted that "Ms. Conner's assessment that claimant has 'extreme' limitations in her ability to interact with the general public is inconsistent with treatment records that reference claimant regularly visiting her mother in the hospital and shopping as needed for household items (Ex l lF, 7F/10 and lOE). Likewise, her conclusion that claimant has 'marked' limitations to maintain concentration and attention is inconsistent with her findings only a few weeks earlier on April 11, 2019 that claimant exhibited no impairment in memory (Ex 7F/l l)." (Tr. 17-18).[2]

---

[2] Defendant notes that Ms. Conner's medical statement is a typical "check- box form" (*see* Tr. 503–05); *Shannon v. Berryhill*, No. 1:17-cv-00066-RJC, 2018 WL 1567368, at *4 (W.D.N.C. Mar. 30, 2018) (stating that a check-box or fill-in-the-blank form is entitled to little weight because it is not supported by objective evidence in the record and therefore is considered weak evidence at best) (citations omitted). While the nature of this type of form may well not lend credibility to its contents, the critical factor remains whether or not the medical provider's opinion is supported by the record, which was properly the focus of the ALJ as described above.

6

Moreover, the record reflects that Plaintiff stopped working, in a job that she enjoyed, because she was serving as primary caregiver to her elderly parents. On May 2, 2018, she reported that she was "under a lot of stress with taking care of her elderly parents and working" (Tr. 444; *see also* Tr. 16). A short time later, on July 25, 2018, she told a treatment provider that "[s]he quit her job at the casino because she couldn't handle working and being primary caregiver to her parents" (Tr. 448; *see also* Tr. 16). In sum, the Court finds there is substantial evidence in the record to support the ALJ's decision that Ms. Connor's testimony was only of "limited persuasive" value.

Third, the ALJ similarly found Dr. Davis's opinion of only "limited persuasion." (Tr. 18). Dr. Davis opined that, "I think she is totally disabled, her mood swings are still not controlled, they are still trying to find a good medicine for her, and so far they have been unsuccessful, to top things off she is dealing with a lot of grief, she is unable to get out of bed some days, concentrating poorly, memory is poor and she is just not doing well at all." In considering Dr. Davis' opinion, the ALJ first noted, correctly, that the issue of disability is reserved to the Commissioner (subject, of course, to judicial review). More directly, the ALJ found that Dr. Davis' "conclusions conflicts (sic) *with his own, unremarkable, longitudinal mental status exam findings* of normal mood and affect, is active and alert, fully oriented, insight and judgment are good, and recent and remote memory are normal (Ex l0F/4, see also 8F5)." (*Id.*) (emphasis added). The ALJ also criticized Dr. Davis's opinion "that claimant experiences pain or other symptoms that 'constantly' interfere with her attention and concentration" as inconsistent with his treatment records, including mental status exams dated April 24, 2019 and May 28, 2019 in which he noted with respect to Ms. Jenkins "normal mood and affect, is active and alert, fully oriented, insight and judgment are good, and recent and remote memory

7

are normal (Exs 8F/5 and l0F/4)." Accordingly, the Court finds there is substantial evidence to support the ALJ's determination that Dr. Davis' opinions were of "limited" persuasive value.

Finally, with regard to the North Carolina Medicaid determination, the ALJ did not find persuasive their conclusion that claimant's mental impairments satisfy listing 12.04 "because the longitudinal record does not support findings of marked limitation in adaptive functioning as treatment records form claimant's PCP as recently as April and May 2019 note that mental status exam is unremarkable with findings that claimant exhibits normal mood and affect, is active and alert, fully oriented, insight and judgment are good and recent and remote memory are normal (Exs 8F/5 and l0F/4)." The Court finds the ALJ's explanation and the record evidence cited to be substantial evidence in support of his decision not to follow the North Carolina Medicaid determination.

## IV. CONCLUSION

In summary, while the Court does not reach any conclusion as to how it would rule on Plaintiff's claim on a *de novo* review, a reasonable mind would find that the evidence is adequate to support the ALJ's decision. The decision of the ALJ, therefore, is hereby **AFFIRMED.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: September 10, 2020

Kenneth D. Bell
United States District Judge